IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DEE A. SCHWYHART                                                      PLAINTIFF

V.                                     NO. 14-5284

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Dee A. Schwyhart, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. §405(g).

**I.      Procedural Background:**

Plaintiff filed her application for DIB on February 3, 2012, alleging an inability to work since January 14, 2011, due to thoracic bulges and back injury. (Tr. 107-113, 139, 164). Plaintiff's last date insured was December 31, 2011. (Tr. 139).  An administrative hearing was held on May 28, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 26-49).

By written decision dated September 24, 2013, the ALJ found that during the relevant time period of January14, 2011 through December 31, 2011, Plaintiff had an impairment or combination of impairments that were severe – degenerative disc disease and obesity. (Tr.

12).   However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13).   The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except occasional climbing and occasional balancing, stooping, kneeling, crouching, and crawling.

(Tr. 13).  With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was capable of performing her past relevant work as a general office clerk. (Tr. 18).

Plaintiff then requested a review of the hearing decision by the Appeals  Council, which denied that request on July 18, 2014. (Tr. 1-5).   Subsequently, Plaintiff filed this action. (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

The Court has reviewed the entire transcript.   The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  <u>Ramirez v. Barnhart</u>, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  <u>Edwards</u>

2

v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able

3

to perform other work in the national economy given her age, education, and experience. <u>See</u> 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. <u>See</u> <u>McCoy v. Schneider</u>, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following issues in this matter: 1) Whether the ALJ failed to fully and fairly develop the record; 2) Whether the ALJ erred in his severity analysis; 3) Whether the ALJ erred in his credibility analysis; and 4) Whether the ALJ erred in his RFC determination. (Doc. 9).

**A.  Severity Analysis:**

Plaintiff argues that the ALJ erred in his severity analysis by failing to find Plaintiff's carpal tunnel syndrome and mental impairments met severity. She further argues that the ALJ failed to consider the combined effect of all of Plaintiff's impairments, severe and non-severe.

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. <u>Hudson v. Bowen</u>**,** 870 F.2d 1392, 1395 (8th Cri. 1989).

In his decision, the ALJ recognized that Plaintiff alleged severe symptoms and functional impairments associated with hypertension, mild right carpal tunnel syndrome, irritable bowel syndrome, and adjustment disorder with mixed anxiety and depressed mood. (Tr. 12). He also explained why he determined them to be non-severe, as follows:

> Dr. William Kendrick, M.D. diagnosed the claimant with hypertension, but did not mention that it was uncontrolled. (Exhibit 3F). Dr. Kendrick also diagnosed her with numbness of the right hand, but surgery was not recommended. (Exhibit 5F). Dr. C.R. Magness, M.D. diagnosed her with irritable bowel syndrome, but he did not find that it limited her physically. (Exhibit 11F). The claimant was diagnosed with adjustment disorder with mixed anxiety and depressed mood and her GAF score was moderate at 53. She received counseling and treatment at Ozark Guidance on a regular basis for approximately a year and the records show that she improved with treatment. (Exhibits 19F, 32F, and 38F). Accordingly, the undersigned has concluded that these impairments are non-severe.

(Tr. 12-13). With respect to her alleged carpal tunnel syndrome, it is noteworthy that Plaintiff indicated that she crocheted daily. It is further noteworthy that Plaintiff did not list carpal tunnel syndrome or mental impairments in her application papers, which is significant. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). Nevertheless, it is clear the ALJ considered Plaintiff's carpal tunnel syndrome and mental impairments, and there is substantial evidence to support his finding they were non-severe.

In addition, in his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr.11). He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr.11). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments"

5

meets or medically equals the criteria of an impairment listed in the relevant listings. (Tr.11).
The ALJ concluded that Plaintiff did not have an impairment "or combination of
impairments" that met or medically equaled the severity of one of the listed impairments.
(Tr.13). This language demonstrates that the ALJ considered the combined effect of
Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v.
Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

### B.  Credibility Analysis:

Plaintiff argues that there is no Polaski analysis, and that the ALJ did not discuss
Plaintiff's side effects of medication and precipitating or aggravating factors.  The ALJ was
required to consider all the evidence relating to Plaintiff's subjective complaints including
evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the
duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4)
dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See
Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a
claimant's subjective complaints solely because the medical evidence fails to support them,
an ALJ may discount those complaints where inconsistencies appear in the record as a
whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's]
credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964,
966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments
could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements
concerning the intensity, persistence and limiting effects of the symptoms were not entirely
credible for the reasons explained in the decision. (Tr. 15).  The ALJ found that Plaintiff

described activities of daily living that were not limited to the extent one would expect, such as the fact that she was able to prepare simple meals daily; went outside once a day; was able to drive a car; was able to go shopping once a week while using a motorized cart; was able to crochet and watch television daily; and was able to talk on the telephone daily. (Tr. 15).

In addition, the medical records contained in the record relating to the relevant time period reveal that after Plaintiff was involved in a motor vehicle accident in January of 2011, she was referred for physical therapy by Dr. William C. Kendrick, of Northwest Family Care. (Tr. 238, 246).  Plaintiff  attended physical therapy beginning in February of 2011, and attended physical therapy sessions until mid March of 2011.  Each of the physical therapy reports indicate that Plaintiff was improving, feeling much better, having less soreness and fewer muscle spasms. (Tr. 284, 286, 288, 290, 292).  However, thereafter, Plaintiff failed to show for the next three visits, reporting that "stuff came up," she was "sick, d/c, busy with stuff can't make appointments," and "d/c, busy." (Tr. 294-296). Plaintiff was also treated by Cindy Beemer, a chiropractor at Beemer Back Center, and on September 14, 2011, Dr. Beemer released Plaintiff from active care. (Tr. 408).  The ALJ noted in his decision that Plaintiff was non-compliant with the recommendations of her physical therapist, which he found suggested that Plaintiff's impairments and the resulting limitations were not as debilitating as alleged. (Tr. 16).  "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted).

The ALJ also noted the MRI study of Plaintiff's thoracic spine, which showed mild diffuse asymmetrical bulges of the T2-3,T3-4, and T5-6 through T7-8, and T9-10 through

T11-12 discs with superimposed small posterocentral protrusions of the T3-4, T5-6, T6-7 and T10-11 disc indenting the thecal sac.  It also showed bilateral mild to moderate faceto-ligamentous arthropathy at multiple thoracic levels; moderate thoracic spondylosis; exaggerated thoracic kyphosis; and no significant spinal stenosis. (Tr. 14, 322).  By letter dated September 22, 2011, Dr. Kendrick reported that Plaintiff had received maximum medical benefit for her spine injury and had a residual problem with her back that he was not going to be able to fix. (Tr. 714).

The ALJ thereafter discussed the medical records that post-date the relevant time period.  (Tr. 14-15).  One of those records is dated March 29, 2012, by neurologist, Dr. Barry Katz, who found Plaintiff's cervical spine had normal range of motion without pain; Plaintiff's thoracic spine revealed normal to palpation without muscle spasms, tenderness or set-off; and her lumbar spine revealed no tenderness, full range of motion without pain, and normal gait. (Tr. 464).  Dr. Katz found that Plaintiff had no neurologic deficits, that her films did not show severe stenosis, and that Plaintiff would continue with a back brace. (Tr. 465).  In a May 7, 2012 Disability Report – Appeal, Plaintiff indicated that she could care for her own personal needs. (Tr. 179).  On May 30, 2012, Plaintiff began seeing Dr. Wayne Brooks, who prescribed a TENS unit for Plaintiff. (Tr. 585).

On June 20, 2012, Dr. Alice M. Davidson completed a Physical RFC Assessment, finding that Plaintiff could perform light work with certain postural limitations. (Tr. 518-525).  On October 16, 2012, Dr. Brooks completed a Physical RFC Assessment, checking boxes in a form and concluding Plaintiff was unable to work for the time period or 10/16/12 date. (Tr. 586-588).  In 2012, Plaintiff begain seeing Dr. Regina Thurman for pain management. (Tr. 716).  In an undated report, Dr. Thurman stated that although Plaintiff

was having muscle spasms, her medications were working for her pain. (Tr. 730).  Dr. Thurman also reported in an undated report that Plaintiff's hands had normal finger and key grip. (Tr. 734).

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's credibility analysis.

### C.  **RFC Determination:**

Plaintiff argues the ALJ erred by: discounting the opinion of the consultative examiner Dr. C. R. Magness; discounting Dr. Brooks' physical RFC Assessment; discounting Dr. Beemer's opinion; and not considering the Global Assessment of Functioning (GAF) scores given by Stanley D. Rest, Ph.D.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC.  Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the

9

record.'" <u>Barrows v. Colvin</u>, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from <u>Willms v. Colvin</u>, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." <u>Andrews v. Colvin</u>, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing <u>Cline v. Colvin</u>, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" <u>Id.</u> "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." <u>Id</u>

With respect to Dr. Beemer's opinion, the ALJ noted that Dr. Beemer opined that Plaintiff would not be able to return to her previous job, but gave her opinion little weight. (Tr. 16). The ALJ reasoned that Dr. Beemer was not an acceptable medical source and that her opinion was more limiting than the objective medical evidence of record would support. (Tr. 16). Information from a chiropractor is considered an "other source," and is not considered an "acceptable source" of medical information to prove disability. <u>See</u> 20 C.F.R. §404.1513(d)(1); <u>see</u> <u>also</u> <u>Cronkhite v. Sullivan</u>, 935 F.2d 133, 134 (8th Cir. 1991).

Dr. C. R. Magness conducted a General Physical Examination of Plaintiff on February 28, 2012. (Tr. 418-424). He found Plaintiff had moderate to severe limitations in her ability to lift and carry, and moderate limitations in her ability to walk, stand, and sit. (Tr.

10

424).  Dr. Magness also reported that Plaintiff had 70% grip in her right hand and 60% grip in her left hand. (Tr. 423).  The ALJ gave Dr. Magness' opinion little weight because he found the opinion was more limiting than the objective medical evidence of record would support and because the opinion was given after the date last insured. (Tr. 16).  The record reveals Plaintiff received conservative treatment for her back impairment during the relevant time period.

Dr. Brooks began seeing Plaintiff after the relevant time period, beginning on May 30, 2012, and prescribed a TENS unit. (Tr. 585).  On October 16, 2012, Dr. Brooks reported he was closing his pain clinic, and completed a form containing boxes for check marks, where he indicated Plaintiff would be unable to work. (Tr. 580, 586-588).  The ALJ addressed Dr. Brooks' opinion, finding that his extreme limitations were not supported by the objective evidence, and that Dr. Brooks' treatment history indicated conservative treatment, with prescription medications and a TENS unit. (Tr. 17).  The ALJ also correctly observed that RFC checklists are entitled to little weight in the evaluation of disability. (Tr. 17).

The ALJ also discussed the opinions given by the state agency physicians, who opined Plaintiff would be able to perform light work.  The ALJ concluded, based upon Plaintiff's ability to perform her activities of daily living, in conjunction with the medical evidence demonstrating minimal abnormalities, reflected a significant functional capacity.

With respect to Plaintiff's argument that the ALJ did not mention Plaintiff's GAF scores, which were at times 53, and most recently, on May 1, 2013, was 60 (Tr. 750), "[t]he Eighth Circuit has rejected an argument that the ALJ's failure to discuss GAF scores requires

reversal." Martin ex rel. RTDR v. Colvin, No. 12-00422, 2013 WL 4591374 at *7 (Aug. 28, 2013), citing Wright v. Astrue, 489 Fed. Appx. 148, 149 (8th Cir. 2012)(unpublished).

Based upon the foregoing, as well as the reasons given in Defendant's well-reasoned brief, the Court finds there is substantial evidence to support the ALJ's RFC determination as well as the weight he gave to the opinions of the various physicians.

### D.  Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ erred by not re-contacting a treating physician in order to clarify the record.. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No.  13-CV-

12

2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting <u>Battles v. Shalala</u>, 36 F.3d 43, 45 (8th Cir. 1994).

Plaintiff contends the ALJ "through [sic] out the examining source opinion evidence from Dr. Magness because it was authored two months after the DLI." (Doc. 9 at p. 7). However, as indicated earlier, the ALJ also discounted Dr. Magness' opinion because he found it more limiting than the objective medical evidence would support.

The records in this case clearly contain sufficient evidence from which the ALJ could make a determination.  Accordingly, the Court finds the ALJ did not fail to fully and fairly develop the record.

**IV.    Conclusion**:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 24th day of November, 2015.


*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

13